FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2009 JAN 27 A 8: 21

CLERK J.Burton
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

LINDSEY NELSON, JR.,                    )
                                        )
        Petitioner,                     )
                                        )
    v.                                  )        CV 108-033
                                        )
DAVID L. FRAZIER, Warden,               )
                                        )
        Respondent.                     )

---

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Petitioner, an inmate incarcerated at Macon State Prison in Oglethorpe, Georgia,

brought the above-captioned case pursuant to 28 U.S.C. § 2254 in the Middle District of

Georgia, and the matter was transferred to this District by Order of Claude W. Hicks, Jr.,

United States Magistrate Judge. (Doc. no. 3). Petitioner was then permitted to amend his

petition to add three new grounds for relief, (doc. nos. 6, 8), and Respondent has responded

to allegations contained in the original and amended grounds for relief alleged by Petitioner,

(doc. nos. 11, 12).[1]  For the reasons set forth below, the Court **REPORTS** and

**RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that

a final judgment be **ENTERED** in favor of Respondent.

---

[1]As explained in the Court's Order permitting Petitioner to amend, the Court
construes the original and amended grounds together. (See doc. no. 8). Thus, for ease of
reference, the Court will refer to one petition throughout this recommendation.

# I. BACKGROUND

On June 1, 2001, following a jury trial in Jefferson County, Georgia, Petitioner was found guilty of (1) burglary with intent to commit theft, (2) burglary with intent to commit terroristic threats, and (3) terroristic threats. Nelson v. State, 625 S.E.2d 465, 467 (Ga. Ct. App. 2005). The first and second burglary counts were merged, and Petitioner was sentenced to consecutive sentences of twenty (20) years of imprisonment on the first count and five (5) years of imprisonment on the third count, without the possibility of parole. Id. at 472-73. Petitioner's motion for new trial was denied, and he filed a timely notice of appeal, challenging his conviction and sentence on the following grounds:

(1) the evidence at trial was insufficient to convict him on all three counts of the indictment;

(2) the trial court erred:

    (a) in charging the jury on the inference of intent to commit theft and terroristic threats,

    (b) in allowing testimony concerning the long-term effects of the alleged crimes on the victim's mental state,

    (c) in allowing testimony that referred to the victim's swollen eye as an "injury" or "wound,"

    (d) in allowing testimony from the victim that Petitioner "threatened" her and allowing the prosecution to characterize Petitioner's actions as "threats," and

    (e) in failing to merge all three counts of the indictment for sentencing purposes;

(3) the trial court improperly sentenced him under the repeat offender statute because:

(a) the prosecution failed to present sufficient proof of three prior felony convictions, and

(b) Petitioner should have been sentenced under the burglary recidivist statute; and

(4) trial counsel was ineffective for:

(a) failing to have a mental evaluation of Petitioner conducted,

(b) failing to object, or reserve the right to object, to several jury charges,

(c) failing to object to testimony concerning the long-term effects of the crimes on the victim's mental state,

(d) failing to object to testimony referencing the victim's swollen eye as an "injury" or "wound," and

(e) failing to properly impeach the victim on cross-examination.

Id. at 469-74. The Georgia Court of Appeals rejected Petitioner's claims as either procedurally defaulted or without merit and affirmed his conviction and sentence. Id. at 474. Petitioner then filed a state habeas corpus petition in which he alleged the following as grounds for relief:

(1) he was subjected to double jeopardy;

(2) he was tried on a multiplicitous and duplicitous indictment;

(3) his sentence was invalid;

(4) he was tried on a defective indictment; and

(5) appellate counsel was ineffective for:

(a)       failing to raise on appeal trial counsel's ineffectiveness in failing to challenge the indictment on double jeopardy grounds,

(b)       failing to raise on appeal trial counsel's ineffectiveness in failing to challenge the indictment as multiplicitous and duplicitous,

(c)       failing to raise on appeal trial counsel's ineffectiveness in failing to challenge the invalid sentence,

(d)       failing to raise on appeal trial counsel's ineffectiveness in failing to challenge the defective indictment,

(e)       failing to raise on appeal trial counsel's ineffectiveness in failing to investigate Petitioner's case prior to trial,

(f)       raising contentions on appeal that were not raised at Petitioner's motion for new trial,

(g)       failing to raise on appeal trial counsel's ineffectiveness in failing to object to the prosecution's improper introduction of evidence at Petitioner's trial and hearing on motion for new trial, and

(h)       failing to preserve Petitioner's due process rights under the Fifth, Sixth, and Fourteenth Amendments.

(Doc. no. 13, Exs. 2 & 3). The state habeas court denied his petition, finding that the first four claims were procedurally defaulted and that his claim of ineffective assistance of counsel was without merit. (Id., Ex. 5).

Petitioner then filed the instant federal habeas petition in which he asserts the following as grounds for relief:

(1)       he was subjected to double jeopardy;

4

(2)     he was tried on a multiplicitous and duplicitous indictment;

(3)     his sentence was invalid;

(4)     he was tried on a defective indictment;

(5)     appellate counsel was ineffective for:

    (a)     failing to raise on appeal trial counsel's ineffectiveness in failing to challenge the indictment on double jeopardy grounds,

    (b)     failing to raise on appeal trial counsel's ineffectiveness in failing to challenge the indictment as multiplicitous and duplicitous,

    (c)     failing to raise on appeal trial counsel's ineffectiveness in failing to challenge the invalid sentence,

    (d)     failing to raise on appeal trial counsel's ineffectiveness in failing to challenge the defective indictment,

    (e)     failing to raise on appeal trial counsel's ineffectiveness in failing to investigate Petitioner's case prior to trial,

    (f)     raising contentions on appeal that were not raised at Petitioner's motion for new trial,

    (g)     failing to raise on appeal trial counsel's ineffectiveness in failing to object to the prosecution's improper introduction of evidence at Petitioner's trial and hearing on motion for new trial, and

    (h)     failing to preserve Petitioner's due process rights under the Fifth, Sixth, and Fourteenth Amendments;

(6)     the trial court erred in allowing introduction of evidence that was not in the custody of the state and that was not provided to Petitioner prior to trial;

(7)     appellate counsel was ineffective for failing to raise issues at Petitioner's motion for new trial that were raised on appeal;

(8)     the trial court improperly charged the jury on the inference of intent to commit theft;

(9)     the evidence at trial was insufficient to convict Petitioner on all three counts of the indictment;[2]

(10)    the trial court erred in denying Petitioner's motion for a directed verdict; and

(11)    unspecified prosecutorial misconduct.

(Doc. nos. 1, 6).  Respondent asserts in his response that all Petitioner's claims are either procedurally defaulted or without merit.  (Doc. nos. 11, 12).

## II.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), signed into law on April 24, 1996, amended § 2254(d) to provide:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[2]As explained at the outset, Grounds 9, 10, and 11 are alleged in Petitioner's motion to amend, (see doc. no. 6), which this Court found moot, (doc. no. 8); however, as Petitioner sought to assert additional grounds for relief, the Court determined that Petitioner intended for his original § 2254 petition to be read in conjunction with his amendments.  (Id.).  In accordance with this Court's Order, Respondent has answered the allegations contained in the original and amended grounds for relief.  (Doc. nos. 11, 12).

The United States Supreme Court addressed Section 2254(d) in <u>Brown v. Payton</u>, 544 U.S. 133 (2005). The Supreme Court explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> The AEDPA provides that, when a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

<u>Id.</u> at 141 (internal citations omitted). Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is "incorrect or erroneous"; only a showing that the decision was "objectively unreasonable" will entitle a petitioner to relief. <u>Wiggins v. Smith</u>, 539 U.S. 510, 520-21 (2003). In sum, a habeas petition may be granted if "the state court's decision was contrary to, or involved an objectively unreasonable application of, the governing Federal law set forth by Supreme Court cases." <u>McIntyre v. Williams</u>, 216 F.3d 1254, 1257 (11th Cir. 2000).

Moreover, the AEDPA sets a highly deferential standard of review for state court factual determinations. The AEDPA "requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" <u>Schriro v. Landrigan</u>, 550 U.S. 465, 127 S. Ct. 1933, 1939-40 (2007) (quoting 28 U.S.C. § 2254(e)(1)); <u>see also</u> <u>Crawford v. Head</u>, 311 F.3d 1288,

1317 (11th Cir. 2002) (affirming state court factual determination "because there is support for it in the record and [the petitioner] has not rebutted the finding by clear and convincing evidence"). Thus, "some evidence suggesting the possibility" that a petitioner's version of the pertinent facts is correct is not sufficient to carry the burden of showing that a state court made an unreasonable determination of fact as contemplated by § 2254(d)(2). Bottoson v. Moore, 234 F.3d 526, 540 (11th Cir. 2000). If the record provides any support for a state court's factual findings, this Court may not set aside those findings unless and until they are rebutted by clear and convincing evidence. Crawford, 311 F.3d at 1317.

## III. DISCUSSION

### A. Unexhausted and Defaulted Claims

#### 1. Exhaustion and Procedural Default Rules Explained

The AEDPA preserves the traditional exhaustion requirement, which requires a district court to dismiss habeas claims that the petitioner has a right to raise, by any available procedure, in state court. 28 U.S.C. § 2254(b)(1)(A) & (c). "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by *any* available procedure, the question presented." Id. § 2254(c) (emphasis added). In reference to this requirement, the Supreme Court has held that a state inmate is deemed to have exhausted his state judicial remedies when he has given the state courts, or they have otherwise had, a fair opportunity to address the state inmate's federal claims. Castille v. Peoples, 489 U.S. 346, 351 (1989). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents

those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).

As the Eleventh Circuit has explained, "[a] state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts." Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). The exhaustion requirement applies with equal force to all constitutional claims, including claims of ineffective assistance of counsel. Footman v. Singletary, 978 F.2d 1207, 1211 (11th Cir. 1992) ("[A] habeas petitioner may not present instances of ineffective assistance of counsel in his federal petition that the state court has not evaluated previously."). Furthermore, a petitioner's failure to exhaust his claims properly ripens into a procedural default once state remedies are no longer available. McNair v. Campbell, 416 F.3d 1291, 1305 (11th Cir. 2005) ("It is well established that when a petitioner has failed to exhaust his claim by failing to fairly present it to the state courts and the state court remedy is no longer available, the failure also constitutes a procedural bar.").

A federal habeas petitioner can run afoul of procedural default rules in one of two ways. First, a federal habeas petitioner can improperly attempt to revive an old claim that a state court has previously denied on procedural grounds. When a state court denies a constitutional claim on "adequate and independent"[3] state procedural grounds, the district

_____

[3]A state court decision rests upon "adequate and independent" state procedural grounds when it satisfies the following three-part test:

> First, the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim. Secondly, the state court's decision must rest solidly on state law grounds, and may not be intertwined

court is precluded from later reviewing the merits of the claim on collateral attack. Judd, 250 F.3d at 1313.

Likewise, a federal habeas petitioner runs afoul of procedural default rules when he attempts to bring a new claim that would be procedurally barred if he attempted to raise it in state court. In such instances, the petitioner's failure to bring the claim properly in state court has "matured into a procedural default." Smith v. Jones, 256 F.3d 1135, 1139 (11th Cir. 2001). Thus, where a state procedural bar is apparent, a court "can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998); see also Harris v. Reed, 489 U.S. 255, 263 n.9 (1989) ("[A] federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."). Simply put, if a claim has not been "fairly presented in the state courts, it is procedurally defaulted." Jones v. Campbell, 436 F.3d 1285, 1304 (11th Cir. 2006).

Of note here, under Georgia law, absent a showing of cause to excuse the default and actual prejudice, the failure to object at trial or to raise on direct appeal any alleged error creates a procedural bar to its consideration in a habeas corpus proceeding. See O.C.G.A. § 9-14-48(d); Black v. Hardin, 336 S.E.2d 754, 755 (Ga. 1985) ("The rule now may be stated

---

with an interpretation of federal law. Finally, the state rule must be adequate, *i.e.*, it must not be applied in an arbitrary or unprecedented fashion. The state court's procedural rule cannot be "manifestly unfair" in its treatment of the petitioner's federal constitutional claim to be considered adequate for the purposes of the procedural default doctrine.

Judd, 250 F.3d at 1313 (internal quotations and citations omitted).

as follows: a failure to make timely objection to *any* alleged error or deficiency or to pursue the same on appeal ordinarily will preclude review by writ of habeas corpus."). Georgia law also requires that claims of ineffective assistance of trial counsel be raised at the "earliest practicable moment" by new counsel, or absent a showing of cause and prejudice, the claims are procedurally defaulted. White v. Kelso, 401 S.E.2d 733, 734 (Ga. 1991); Thompson v. State, 359 S.E.2d 664, 665 (Ga. 1987).

Also of note, Georgia law requires state habeas petitioners to raise all available grounds for relief in a first or amended habeas petition. See O.C.G.A. § 9-14-51. Under § 9-14-51, a second or successive Georgia state habeas petition is procedurally barred unless a state habeas judge concludes that the grounds cited in the petition could not have been raised in the original petition. See id. The Eleventh Circuit has held that Georgia's successive petition statute should be enforced by federal courts "unless there is some indication that a state court judge would find the claims in question could not reasonably have been raised in the original or amended petition." Chambers v. Thompson, 150 F.3d 1324, 1327 (11th Cir. 1998).

Of course, the Eleventh Circuit has explained that a procedural default may be excused if certain conditions are met:

> A petitioner may obtain federal review of a procedurally defaulted claim if he can show both cause for the default and actual prejudice resulting from the default. Additionally, in extraordinary cases, a federal court may grant a habeas petition without a showing of cause and prejudice to correct a fundamental miscarriage of justice.

Jones, 436 F.3d at 1304 (internal citations omitted). Cause entails a showing "that some objective factor external to the defense impeded" efforts to comply with the state procedural

rule. Coleman v. Thompson, 501 U.S. 722, 753 (1991).[4] A state petitioner may also demonstrate cause to overcome a procedural default by demonstrating that he received constitutionally ineffective assistance of counsel. Turpin v. Todd, 493 S.E.2d 900, 906 (Ga. 1997). The narrow fundamental miscarriage of justice exception, on the other hand, encompasses the extraordinary instance in which a constitutional violation probably has resulted in the conviction of one actually innocent of the crime. Murray v. Carrier, 477 U.S. 478, 496 (1986).

### 2.    Defaulted Claims

In Grounds 1 through 4 of his federal habeas petition, Petitioner alleges that (1) he was subjected to double jeopardy, (2) he was tried on a multiplicitous and duplicitous indictment, (3) his sentence was invalid, and (4) he was tried on a defective indictment. These claims were presented to the state habeas court, which found them to be defaulted because they had not been raised at trial or on direct appeal. (Doc. no 13, Ex. 5) (citing O.C.G.A. § 9-14-48(d); Black, 336 S.E.2d at 755). The state habeas court also concluded that Petitioner had not demonstrated cause and prejudice to overcome the procedural default. (Id.). Ground 8 of Petitioner's federal habeas petition alleges that the trial court improperly charged the jury on the inference of intent to commit theft. The Georgia Court of Appeals found that Petitioner had also procedurally defaulted this claim by failing to object (or reserve the right to object) when the charge was issued. Nelson, 625 S.E.2d at 471; see

---

[4] If a petitioner is able to prove cause, he must then show prejudice by demonstrating that the errors at trial not only "'created a *possibility* of prejudice, but that they . . . infect[ed] his entire trial with error of constitutional dimensions.'" Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).

O.C.G.A. § 9-14-48(d); Black, 336 S.E.2d at 755 (finding that where no timely objection is made at trial, the issue is waived, which creates "a procedural bar to . . . consideration in habeas corpus proceedings"). Furthermore, the appellate court found that this claim regarding the trial court's allegedly improper jury instruction was not reviewable because it was not raised in Petitioner's motion for new trial or at his hearing on the motion. Id. Respondent contends that this Court should defer to both the state habeas and state appellate courts' findings on these issues.[5] (Doc. no. 11, pp. 18-19).

The procedural default rule relied upon by the state habeas and appellate courts constitutes an independent and adequate state procedural ground in that it is exclusively a state doctrine and it is regularly applied by Georgia state courts. See Hightower v. Schofield, 365 F.3d 1008, 1037 (11th Cir. 2004), *abrogated on other grounds by* Hightower v. Schofield, 545 U.S. 1124 (2005); Defuentes v. Dugger, 923 F.3d 801, 803 (11th Cir. 1991). Thus, this Court is barred from considering the claim unless Petitioner can show cause and prejudice sufficient to overcome his default or that a fundamental miscarriage of justice has occurred. Although Petitioner makes multiple claims of ineffective assistance of appellate counsel that might excuse his default, see Turpin, 493 S.E.2d at 906, as explained *infra*, the Court determines that such claims have either been procedurally defaulted[6] or that the state

---

[5]In the alternative, Respondent argues that Grounds 2 through 4 do not allege a violation of "clearly established federal law" and therefore fails to state a claim for federal habeas relief. (Doc. no. 11, pp. 19-20). As the Court determines that these claims are defaulted, it does not reach this issue.

[6]It is well-settled that a claim of ineffective assistance of counsel must be presented to state courts as an independent claim before it may be used to establish cause to overcome procedural default. Payne v. Allen, 539 F.3d 1297, 1314 n.16 (11th Cir. 2008) (quoting Murray v. Carrier, 477 U.S. 478, 488-89 (1986)); Henderson v. Campbell, 353 F.3d 880,

13

habeas court properly concluded that Petitioner's appellate counsel rendered effective assistance of counsel. Thus, Petitioner's claims of ineffectiveness of appellate counsel do not suffice to excuse his procedural default. Furthermore, Petitioner has failed to present any other evidence to suggest that appellate counsel was ineffective or otherwise demonstrate cause as to why his procedural default should be excused.[7] Because Grounds 1 through 4 and Ground 8 have been defaulted (and this default has not been excused), these claims are barred from review and do not provide a basis for granting federal habeas corpus relief.

### 3. Unexhausted Claims Now Procedurally Defaulted

Petitioner also asserts several claims that were never exhausted in the Georgia state courts and are now procedurally defaulted. First turning to those claims that could have been raised on direct appeal, as noted above, under Georgia law, absent a showing of cause to excuse the default and actual prejudice, the failure to object at trial or to raise on direct appeal any alleged error creates a procedural bar to its consideration in a habeas corpus proceeding. See O.C.G.A. § 9-14-48(d); Black, 336 S.E.2d at 755 ("The rule now may be stated as follows: a failure to make timely objection to *any* alleged error or deficiency or to pursue the same on appeal ordinarily will preclude review by writ of habeas corpus."). In Ground 6 of his federal habeas petition, Petitioner asserts that he is entitled to federal habeas relief because the trial court erred in allowing introduction of evidence that was not in the

---

896-97 (11th Cir. 2003). Because some of Petitioner's claims of ineffective assistance of counsel have not been presented for review in state court and have been procedurally defaulted, they may not be used to establish cause to overcome the procedural default of Petitioner's other claims.

[7]Because Petitioner has not demonstrated cause, the Court does not reach the issue of prejudice. See Johnson, 256 F.3d at 1171.

custody of the state and that was not provided to Petitioner prior to trial. Ground 10 asserts that the trial court erred in denying Petitioner's motion for a directed verdict. Finally, Petitioner alleges in Ground 11 that he is entitled to federal habeas relief based on unspecified prosecutorial misconduct. However, Petitioner failed to present any of these claims on direct appeal. Thus, under Georgia state law, the failure to raise these claims in state court constitutes a procedural bar, which would prohibit the state habeas court from reviewing them, and thus prevents this Court from considering them as a basis for federal habeas relief, unless Petitioner demonstrates cause and prejudice to overcome this default. See Bennett v. State, 657 S.E.2d 6, 8 (Ga. App. 2008) (finding that appellant's failure to object to the admissibility of evidence in alleged violation of discovery rules precluded review of the issue on direct appeal); Turpin v. Mobley, 502 S.E.2d 458, 462 (Ga. 1998) (finding that appellant's claim of prosecutorial misconduct was procedurally defaulted because it should have been raised on direct appeal); Wade v. Polytech Indus., 413 S.E.2d 468, 475-76 (Ga. App. 1991) (holding that any objections to the trial court's ruling on a motion for directed verdict must first be raised in a motion for a new trial in order to be considered on appeal).

Regarding Petitioner's claim that could have been raised in state habeas proceedings, Ground 7 of Petitioner's federal habeas petition contends that appellate counsel was ineffective for failing to raise issues as part of his motion for new trial that were raised on appeal. It would be illogical to contend that this claim should have been raised on appeal, as attorneys are not expected to argue their own inadequacies before an appellate court. See Williams v. State, 606 S.E.2d 594, 595 (Ga. Ct. App. 2004) (noting that the proper means

for appellant to pursue a claim of ineffectiveness of appellate counsel was in a habeas corpus proceeding). However, Petitioner could have raised this claim as part of his state habeas petition but failed to do so. As discussed above, Georgia requires state habeas petitioners to raise all available grounds for relief in their first or amended habeas petitions. O.C.G.A. § 9-14-51. Thus, even if Petitioner returned to state court to present this claim, under O.C.G.A. § 9-14-51, any possible state relief would be barred; accordingly, this particular claim of ineffective assistance of appellate counsel raised in Petitioner's federal habeas petition cannot be considered as a basis for federal habeas relief, unless he can demonstrate cause and prejudice that would excuse his default. See Chambers, 150 F.3d at 1327.

As explained previously, Petitioner's procedural default may be excused under certain narrow circumstances; however, he has not shown cause or prejudice to excuse the procedural default, nor that a fundamental miscarriage of justice has occurred.[8] As Petitioner has provided no basis for excusing the procedural default of the claims presented in Grounds 6, 7, 10, and 11, they are barred from review in these federal proceedings and provide no basis for granting federal habeas corpus relief.

**B.      Claims Rejected by the State Courts**

**1.      Alleged Ineffectiveness of Appellate Counsel**

In Ground 5 of his federal petition, Petitioner alleges that his appellate counsel was ineffective for: (1) failing to raise on appeal trial counsel's failure to challenge the indictment on double jeopardy grounds, (2) failing to raise on appeal trial counsel's failure

---

[8]As discussed above, Petitioner's claims of ineffective assistance of appellate counsel do not suffice to overcome his default. See *supra* pp. 13-14.

to challenge the indictment as multiplicitous and duplicitous, (3) failing to raise on appeal trial counsel's failure to challenge the invalid sentence, (4) failing to raise on appeal trial counsel's failure to challenge the defective indictment, (5) failing to raise on appeal trial counsel's failure to investigate Petitioner's case prior to trial, (6) raising issues on appeal that were not raised at Petitioner's motion for new trial, (7) failing to raise on appeal trial counsel's failure to object to the prosecution's improper introduction of evidence at Petitioner's trial and hearing on motion for new trial, and (8) failing to preserve Petitioner's due process rights under the Fifth, Sixth, and Fourteenth Amendments.

Petitioner presented this claim and all its subparts in his state habeas petition. However, specifically applying the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984), and Battles v. Chapman, 506 S.E.2d 838 (Ga. 1998), the state habeas court determined that Petitioner had failed to meet these standards for stating a claim for ineffective assistance of appellate counsel and therefore rejected his claim. (Doc. no. 13, Ex. 5, pp. 4-7).

As correctly noted by the state habeas court, ineffective assistance of counsel claims are analyzed under the two-prong test set forth by the Supreme Court in Strickland v. Washington.[9] To make out a claim of ineffective assistance of appellate counsel, Petitioner must first show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Second, he must show that he suffered such prejudice that, but for his appellate counsel's errors, there is a reasonable probability that the

---

[9] The Strickland test applies to claims of ineffective assistance of both trial and appellate counsel. See Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991).

results of the proceeding would have been different. Id. at 694. The facts of Strickland, however, are dissimilar from those presented here. Moreover, it cannot be said that the result reached by the state habeas court was contrary to clearly established federal law. Thus, the Court will focus its attention on whether the state habeas court unreasonably applied Strickland to the facts of this case. Bell v. Cone, 535 U.S. 685, 699 (2002) ("[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. Rather, [the petitioner] must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner." Id. (internal citations omitted)).

With regard to the performance prong of Strickland, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion--though the presumption is not insurmountable--is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as [appellate] counsel acted . . . ." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged

deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985). Under the prejudice prong of Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . ." Id. at 616 (citing Strickland, 466 U.S. at 694-95). As the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004).

Furthermore, in the appellate context, the Court recognizes that a criminal defendant has no "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751 (1983). It is up to appellate counsel to winnow out weaker arguments and select the most promising issues for review. Id. at 751-52. Indeed, the appellate "attorney need not advance every argument, regardless of merit, urged by the appellant . . . ." Evitts v. Lucey, 469 U.S. 387, 394 (1985).

Along with these basic principles concerning ineffective assistance of counsel claims, the Court must also consider the facts underlying Petitioner's conviction. The facts underlying Petitioner's convictions are set forth in the Georgia Court of Appeals decision

and, pursuant to § 2254(e)(1), are presumed to be correct. Viewing the facts in a light most

favorable to the verdict, the Georgia Court of Appeals determined that:

> Hattie Robertson Haynes, an 83-year-old widow, lived alone in a private residence in Jefferson County. During the early morning hours of March 3, 2001, Ms. Haynes was suffering from the flu and was having trouble sleeping. After awakening because of her illness at approximately 3:00 a.m., Ms. Haynes checked the locks on her doors and windows, returned to bed, and drifted off to sleep.
>
> As Ms. Haynes slept, a male later identified as [Petitioner] secretly entered her home through the back door. [Petitioner] did not have permission to enter the home and had not been invited. At approximately 4:00 a.m., Ms. Haynes was startled awake as [Petitioner] pulled the covers away from her body. [Petitioner] got on top of Ms. Haynes, straddling her as she lay on the bed. Ms. Haynes screamed, begging [Petitioner] not to rape her and to get out of her home. "Scared and trembling," Ms. Haynes attempted to resist, but [Petitioner] grabbed her wrists and pinned them down on the bed. During the struggle, [Petitioner] "made [her] arm hurt" and caused a "red swelling area" underneath Ms. Haynes' left eye. [Petitioner] warned her to stop screaming and not to make him mad, or he would hurt and kill her.
>
> Ms. Haynes then "slowed down," asked [Petitioner] to get off of her because she had arthritis and was in pain, and once again pleaded with him to leave her home. [Petitioner] got out of the bed but refused to leave. [Petitioner] briefly sat down in a bedside chair, but then began pacing back and forth across the bedroom. While he paced, [Petitioner] told Ms. Haynes that he had been in her home for an hour before she awakened. [Petitioner] also pointed to a gold chain around his neck and stated that "this [is] what people go to jail for" and that "[b]oys go to jail and prison for these gold chains." [Petitioner] told Ms. Haynes that the gold chain around his neck was "just like the one you got." Ms. Haynes looked over at her dresser and realized that [Petitioner] had seen her jewelry box lying there, had taken a gold chain out of it, and had placed the chain on the nightstand by her bed.
>
> [Petitioner] remained in Ms. Haynes home for approximately one hour after she awakened. During that time, [Petitioner] continued to pace back and forth, began to cry, told Ms. Haynes his name and where he lived, and stated that he was sick and needed help. [Petitioner] told Ms. Haynes that his parents did not love him, that his mother would not put her arms around him, and that he wanted to talk to Ms. Haynes because she was a "Christian-hearted woman." "Frightened to death," Ms. Haynes pled with [Petitioner] to leave, but he responded by threatening several times to kill her and

warning her that he "could kill [her] in this house and walk out . . . [and] nobody would never know who killed [her]." Finally, [Petitioner] wrote his name and address down on a piece of paper, told Ms. Haynes that he knew she would call the police, and left the premises.

Ms. Haynes called the police. A patrol officer with the City of Wrens Police Department responded to the call and found Ms. Haynes standing at the back door of the residence "visibly upset, shaken, [and] frightened." The officer also observed that Ms. Haynes had a red swollen area underneath her left eye that appeared to be a "fresh" wound.

That night, Ms. Haynes contacted her daughter in New Jersey to inform her of the incident, and her daughter noted that Ms. Haynes was still afraid at that point and "was tearful, crying, [and] very upset as they spoke on the phone. Four days later, Ms. Haynes' daughter traveled to Jefferson County to be with her mother, who "cried [and] talked about it on and on," "couldn't sleep," and could no longer lay on the same side of the bed. As Ms. Haynes explained, "If I'd been able, I'd just moved out of the house and sold it and got rid of it."

Nelson, 625 S.E.2d at 468-69.

### a.     Failure to Raise Trial Counsel's Alleged Errors

In the instant petition, Petitioner alleges, as he did in his state habeas petition, the appellate counsel was ineffective for failing to raise on appeal certain alleged errors by trial counsel, including trial counsel's failure to (1) challenge the indictment on double jeopardy grounds, (2) challenge the indictment as multiplicitous and duplicitous, (3) challenge the invalid sentence, (4) challenge the defective indictment, (5) investigate Petitioner's case prior to trial, and (6) object to allegedly improper introduction of evidence at Petitioner's trial and hearing on motion for new trial. Petitioner's appellate counsel, Tony Axam ("Mr. Axam"), testified at the evidentiary hearing before the state habeas court that he did not raise these issues in the context of ineffectiveness of trial counsel or as independent issues because he did not believe such arguments to be "legally justifiable." (Doc. no. 13, Ex. 7, p. 45). Based

on the trial record, Mr. Axam's qualifications, the number of alleged errors raised on direct appeal, and Mr. Axam's testimony that he did not believe above-noted issues to be "legally justifiable," the state habeas court determined that Petitioner had not received ineffective assistance of appellate counsel.

Although Petitioner asserts in the instant petition that his appellate counsel was ineffective for failing to raise these alleged errors by trial counsel on appeal, the record does not support this contention. Mr. Axam testified before the state habeas court that he did not believe those issues to be legally justifiable, and Petitioner has not shown otherwise. Indeed, Petitioner has failed to identify any legitimate reason why such arguments should have been raised on appeal, and it cannot be said that any prejudice inured to Petitioner as a result of appellate counsel's omission of these arguments. Accordingly, this Court finds that the state habeas court's decision in this regard was neither contrary to nor an unreasonable application of prevailing Supreme Court precedent. In sum, this claim lacks merit and should be denied.

### b.    Failure to Raise Issues in Motion for New Trial

As noted above, the Georgia Court of Appeals found that several of Petitioner's claims were barred from review because they were not raised at the earliest practicable moment, which would generally be in a motion for new trial. Mr. Axam agreed with Petitioner at the evidentiary hearing on his state habeas corpus petition that those errors should have been raised in the motion for new trial. (Id. at 40-42). However, he also stated that the omission was not purposeful and that it was merely a mistake on his part. (Id. at 42). This testimony would suggest that Mr. Axam's performance was deficient under the first prong of Strickland; however, the state habeas court, in determining that Petitioner had failed

22

to demonstrate that Petitioner received ineffective assistance of counsel, implicitly determined that this error did not result in any prejudice to Petitioner.

Although Petitioner does not identify in his federal habeas petition which errors should have been raised by appellate counsel at the motion for new trial, the Court gathers from the opinion of the Georgia Court of Appeals that he is referring to appellate counsel's (1) failure to challenge the jury charge on the inference to commit theft and terroristic threats, (2) failure to object to testimony concerning the long-term effects of his acts on the victim's mental state, and (3) failure to object to testimony referencing the victim's swollen eye as an "injury" or "wound." Nelson, 625 S.E.2d at 471. As noted above, these contentions were raised in Petitioner's state habeas petition, and the state habeas court found that appellate counsel was not ineffective for failing to raise these errors earlier. Petitioner has not demonstrated in the instant petition that these errors not preserved for appeal have merit, and therefore has not demonstrated that he was prejudiced by counsel's alleged error in this respect. Accordingly, this Court finds that the state habeas court's decision in this regard was neither contrary to nor an unreasonable application of prevailing Supreme Court precedent, and this claim should also be denied.

### c. Failure to Preserve Due Process Rights

In the instant petition, Petitioner also alleges that appellate counsel was ineffective for failure to preserve his due process rights under the Fifth, Sixth, and Fourteenth Amendments. While Petitioner does not specify which rights appellate counsel failed to preserve and how he failed to preserve them, the Court gathers from a reading of the Fifth and Sixth Amendments and the allegations contained in other parts of Petitioner's federal

habeas petition that he is alleging that counsel failed to preserve his due process rights by failing to challenge the nature of the grand jury indictment, failing to raise the issue of double jeopardy, and failing to challenge the effectiveness of trial counsel. <u>See</u> U.S. Const. amend. V ("No person shall be held to answer for a . . . crime, unless on a presentment or indictment of a Grand Jury; . . . nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb"); <u>id.,</u> amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.").

As already noted, Mr. Axam testified that he did not believe a challenge to the nature of the indictment or a challenge based on double jeopardy would be "legally justifiable." (Doc. no. 13, Ex. 7, p. 45). Furthermore, Mr. Axam in fact raised several issues regarding the ineffectiveness of trial counsel on appeal but did not raise others because, again, he did not believe them to be "legally justifiable." The state habeas court thus concluded that Petitioner did not receive ineffective assistance of appellate counsel. Once again, Petitioner has failed to identify any legitimate reason why such arguments should have been raised on appeal, and therefore has failed to demonstrate that any prejudice inured to him as a result. Accordingly, this Court finds that the state habeas court's decision with respect to this particular claim of ineffectiveness of appellate counsel was neither contrary to nor an unreasonable application of prevailing Supreme Court precedent. In sum, this claim by Petitioner is also without merit and should be denied.

**2.      Alleged Insufficiency of the Evidence**

Finally, the Court assesses Ground 9 of Petitioner's federal habeas petition, which alleges that the evidence at trial was insufficient to convict Petitioner on all three counts of

the indictment. In <u>Jackson v. Virginia</u>, the Supreme Court held that, under the Due Process Clause, no person can be convicted unless the evidence is sufficient to convince the factfinder beyond a reasonable doubt of the existence of every element of the offense. <u>Jackson v.Virginia</u>, 443 U.S. 307, 316 (1979). The key issue is whether "viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Id.</u> at 319. The facts of <u>Jackson</u>, however, are dissimilar from those presented here. Moreover, it cannot be said that the result reached by appellate court was contrary to clearly established federal law. Thus, the Court will focus its attention on whether the appellate court unreasonably applied <u>Jackson</u> to the facts of this case.

Along with these basic principles regarding sufficiency of the evidence, the Court is once again guided by the AEDPA's mandate that the state court's factual determinations, as detailed on pages 20-21 above, are presumptively correct absent a rebuttal by clear and convincing evidence. <u>See</u> 28 U.S.C. 2254(e)(1). In applying <u>Jackson</u> to Petitioner's claim of insufficiency of the evidence, the appellate court noted that pursuant to Georgia law, in order to convict Petitioner of committing burglary with the intent to commit theft, the state had to establish "(1) that [Petitioner] entered Ms. Haynes' home without authority and (2) that he intended to commit a theft therein." <u>Nelson,</u> 625 S.E.2d at 469 (quoting <u>Lloyd v. State,</u> 308 S.E.2d 25, 25 (Ga. Ct. App. 1983)). Based on the facts and law cited above and the evidence presented, the Georgia Court of Appeals determined that any rational trier of fact could have found Petitioner guilty of burglary with the intent to commit theft. <u>Id.</u> (citing <u>Jackson,</u> 443 U.S. at 318). Specifically, the appellate court found that Petitioner's intent was

a matter for the jury and that the state's evidence regarding the presence of valuables in the victim's home and Petitioner's conduct following his unauthorized entry was sufficient to establish Petitioner's intent to commit theft beyond a reasonable doubt.[10] Id. at 469-470 (citations omitted).

With regard to the charge of making terroristic threats, the Georgia Court of Appeals noted that in order to find Petitioner guilty under the circumstances presented, the state was required to prove "(1) that [Petitioner] threatened Ms. Haynes with physical injury and (2) that he acted with the purpose of terrorizing her." Id. at 470 (citing Martin v. State, 464 S.E.2d 872, 878 (Ga. Ct. App. 1995)). Again, based on the facts and law cited above and the evidence presented, the Georgia Court of Appeals determined that a rational juror could have found Petitioner guilty of making terroristic threats. Id. (citing Jackson, 443 U.S. at 318). Specifically, the appellate court found that the victim's testimony and its corroboration by the responding officer were sufficient to establish the elements of the crime and thus Petitioner's guilt beyond a reasonable doubt. Id. at 471.

In the instant petition, Petitioner again asserts that the evidence presented was insufficient to support his convictions. However, Petitioner's assertions are affirmatively contradicted by the record, and Petitioner offers no additional evidence, much less "clear and convincing evidence," in his federal habeas petition to undermine or contradict the factual determinations of the state appellate court. Accordingly, it cannot be said that the state court

---

[10]Petitioner did not challenge the unauthorized entry element on appeal. Nelson, 625 S.E.2d at 469. Moreover, as noted previously, both burglary counts were merged, and thus the trial court did not enter judgment on the count of burglary with intent to commit terroristic threats. Accordingly, the state appellate court found no reason to address this enumeration of error. Id. at 470 (citation omitted).

unreasonably applied <u>Jackson</u> to the facts of this case, as the record demonstrates that a rational trier of fact could have found Petitioner guilty of the offenses with which he was charged. Therefore, Petitioner has failed to Ground 9 of Petitioner's federal habeas petition alleging insufficiency of the evidence at trial also fails.

### III.  CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 27 day of January, 2009, at Augusta, Georgia.


                           _____
                           W. LEON BARFIELD
                           UNITED STATES MAGISTRATE JUDGE